CHAMBERS, Circuit Judge:
In January 1975, appellee Pacific Propeller, Inc. (a Washington corporation operating in Washington) shipped to California a propeller assembly that it had overhauled for Holiday Airlines (a California corporation operating in California). Simultaneously, it billed Holiday $21,259.58 for the work that had been done and, relying on the Washington artisans’ lien statute (RCW 60.08.010),[1] filed a “Notice of Claim of Lien —Aircraft” with the Federal Aviation Administration at its central recording office at Oklahoma City.
A month later Holiday commenced Chapter XI proceedings in the Central District of California and it was thereafter adjudicated bankrupt. The trustee brought an action to determine the validity of several liens. Pacific Propeller counterclaimed asserting the validity of its lien against the aircraft in which the propeller had been reinstalled.[2]
The bankruptcy judge and the district judge both concluded (though they got there by different routes) that the lien attached in Washington, that Washington’s non-possessory lien law applied, and that the lien was valid under Washington law and the notice properly recorded so as to entitle it to priority under the Federal Aviation Act. The trustee argues that the aircraft was present in California at the time the bankruptcy proceedings were corn- *733 menced and that the applicable lien law is that of the forum State, i. e. California. As the pertinent California statute (California Code of Civil Procedure, § 1208.61) conditions the lien on retained possession, the Trustee takes the position that the lien is invalid.
The lien was filed under terms of the Federal Aviation Act. The pertinent provisions of 49 U.S.C. § 1403(a) state:
“(a) The Secretary of Transportation shall establish and maintain a system for the recording of each and all of the following:
(1) Any conveyance which affects the title to, or any interest in, any civil aircraft of the United States;
(2) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in [certain engines and propellers]; and
(3) Any lease, and any mortgage, equipment trust, contract of conditional sale, or other instrument executed for security purposes, which lease or other instrument affects the title to, or any interest in, any aircraft engines, propellers, or appliances maintained by or on behalf of an air carrier . . .”
The provisions of the Federal Aviation Act preempt State law insofar as they relate to the priority of liens. State Securities Co. v. Aviation Enterprises, Inc., 355 F.2d 225 (10th Cir. 1966); Pope v. National Aero Finance Co., Inc., 236 Cal.App.2d 722, 46 Cal.Rptr. 233 (1965). But matters touching on the validity of liens are determined by underlying State law. See 49 U.S.C. 1406; State Securities Co. v. Aviation Enterprises, Inc., supra; Texas National Bank of Houston v. Aufderheide, 235 F.Supp. 599 (E.D.Ark.1964); Aircraft Investment Corp. v. Pezzani & Reid Equipment Co., 205 F.Supp. 80 (E.D.Mich.1962). We thus begin with an acknowledgment that State lien law applies. The issue is which State’s lien law? And to determine of that issue, we must first decide what choice of law rationale is to be employed.
The district judge, following the general rule in diversity of citizenship cases (Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941)) looked to the forum State’s choice of law rules in order to determine which State lien law should be applied. He concluded that under California’s “governmental interest” approach, as defined in Bernhard v. Har-rah’s Club, 16 Cal.3d 313, 128 Cal.Rptr. 215, 546 P.2d 719 (1976) and Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967), Washington’s and not California’s interest would be more impaired if its lien law were not applied. He then concluded that the lien was valid under Washington’s non-possessory lien statute.
The bankruptcy judge had looked to the Restatement (Second) of Conflicts for its choice of law rule as to chattel liens. Section 251 of that Restatement focuses the inquiry on which State’s law bears the more “significant relationship to the parties, the chattel and the security interest.” [3] Applying this test, he also concluded that Washington lien law should be employed. In applying the Restatement’s test, rather than the conflicts law of California, the bankruptcy judge had the blessing of several commentators, including Collier, who urges that bankruptcy courts should not be required to use the conflicts rule in diversity of citizenship cases but “should be free to *734 exercise for itself the choice of applicable state law.” 4B Collier, on Bankruptcy (14th Ed. 1976), 170.49 at 605-606.
We agree with the bankruptcy judge that the rule in diversity of citizenship cases, i. e. of mechanical application of the conflicts law of the forum State, should not be required in bankruptcy proceedings, at least in Federal Aviation Act cases. The Bankruptcy Act is silent as to the appropriate choice of law when two States have competing interests. Aircraft and their appurtenances, which are subject to the Act, are mobile by nature. It is their very mobility that led to the enactment of the federal recording provisions, so that creditors and others would have one central location to refer to when they wished to search titles and other ownership interests. Otherwise, it would be necessary to search what might well be a multitude of State and County recording offices to find the information. The place where such mobile aircraft property happens to be at the time bankruptcy is commenced, should not be seen as controlling when choice of law issues are presented.
The Act itself addresses the choice of law problem in an amendment, enacted in 1964. Section 1406 of Title 49 states:
“The validity of any instrument the recording of which is provided for by section 1403 of this title shall be governed by the laws of the State, District of Columbia, or territory or possession of the United States in which such instrument is delivered, irrespective of the location or the place of delivery of the property which is the subject of such instrument. Where the place of intended delivery of such instrument is specified therein, it shall constitute presumptive evidence that such instrument was delivered at the place so specified.”
Sanders v. M. D. Aircraft Sales, Inc., 575 F.2d 1086 (3d Cir. 1978), considers choice of law issues in the context of a consensual finance company loan. The Third Circuit refers to the legislative history of Section 1406, and its recognition that the Federal Aviation Act as adopted in 1958 had “left unresolved serious choice of law questions with respect to liens on chattels so mobile as aircraft.” 575 F.2d at 1088. It then quotes from the legislative history of Section 1406 as contained in Senate Report 1060, 88th Cong., 2nd Sess., reprinted in U.S.Code Cong. & Admin.News, pp. 2319-2320 (1964):
“The rule would apply to all instruments subject to the recording provisions of § 503 of the Federal Aviation Act. Included would be various instruments executed for security purposes such as conveyances, leases, mortgages, equipment trusts, conditional sales contracts, etc. Assignments, amendments, and supplements to such instruments would similarly be covered. To determine the validity of such an instrument, one need only to look to the substantive law of the particular State in which the instrument was delivered.”
In determining that the law of the State where the “instrument was delivered” is to apply, the Congress specifically rejected two alternative suggestions, i. e. that the jurisdiction where the property is located, or where the parties reside, be considered the jurisdiction whose law will be applied to resolve the conflicts question. In the view of the Senate Report, both alternatives would have resulted in “needless complexities and difficulties”. More particularly, if the jurisdiction where the property was located were chosen, “it would be necessary to know the exact location of every aircraft at the precise moment the refinancing instrument was executed.” Sanders views Section 1406 as a preemption by federal law and concludes that accordingly Congress “has sensibly federalized choice of law, thereby freeing aircraft financing from the forum shopping which the rule of Klaxon Co. v. Stentor Electric Mfg. Co. . . might otherwise produce.” 575 F.2d at 1088.
In the words of the Senate Report, the adoption of Section 1406 “establishes a uniform Federal rule governing the validity of instruments affecting title to or interests in aircraft and related equipment” and the *735 provisions of the Section “would apply to all instruments subject to the recording provisions of Section 503 of the Federal Aviation Act [49 U.S.C. § 1403].”
We cannot accept an argument that artisans’ liens are not within the ambit of the Act. Section 1403 refers to any “instrument executed for security purposes” and to any “other instrument [that] affects the title to, or any interest in, any aircraft engines, propellers, or appliances . . .” Rules promulgated in 14 C.F.R. 49.41 and 19.51, refer to “Any lease, a notice of tax lien, or other lien . . . ” See also International Atlas Services, Inc. v. Twentieth Century Aircraft Co., 251 Cal.App.2d 434, 59 Cal.Rptr. 495 (1967), cert. denied, 389 U.S. 1038, 88 S.Ct. 775, 19 L.Ed.2d 827 (1968); Smith v. Eastern Automotive Corp., 99 N.J.Super. 340, 240 A.2d 17 (1968); Crescent City Aviation Inc. v. Beverly Bank, 139 Ind.App. 669, 219 N.E.2d 446 (1966).
It is not clear how liens that arise by operation of law, and not by the agreement of the parties (and thus without an “instrument” that is “delivered”), fit within the scope of Section 1406, if indeed they fit at all. The artisan’s lien in this case was filed on an F.A.A. form used for the purpose and was not “delivered” by one party to another party, but was completed by the lienholder and filed with the F.A.A.
M We conclude that it is entirely consistent with the spirit of Section 1406 that the validity of this non-consensual lien be tested by the law of the State in which the lien attached. The lien is a product of the operation of that State’s law. The reasoning behind Section 1406, as explained by its legislative history, is that the place where aircraft or their appurtenances happen to be when bankruptcy is undertaken, is very largely irrelevant.[4]
The bankruptcy judge’s reasoning is significantly in accord with our conclusion. He held that the lien law of Washington should apply after analyzing the facts in the light of Section 251 of the Restatement (Second) of Conflicts, i. e. its “significant relationship” test. He held that Washington lien law bore the more significant relationship to the parties, the chattel and the security interest, after noting that the airline delivered the propeller assembly to Washington, for work to be done in Washington, by a Washington corporation, with Washington employees, and with payment for the work to be made in Washington. This reasoning when reduced to its essentials implements our conclusion that as Washington was the State whose law gave rise to the lien, and was the State where the lien attached, then Washington’s lien law would most properly be applied to test the validity of the lien. We find his reasoning supportive of, and consistent with, the conclusions we draw of the general statutory intent expressed by Section 1406. We thus conclude that Washington lien law applies and, under that law, the lien was entirely valid.
The other issues require little discussion. The trustee argues that even if Washington lien law applied (and we hold here that it did apply), the propeller company did not comply with procedural requirements and that the lien was therefore unenforceable. We disagree. The lien was filed with the F.A.A. at its facility in Oklahoma City, which is the appropriate place for it to have been filed under the federal rules. This federal recording statute, and rules implementing it, clearly preempt the filing requirements of Washington law. McCormack v. Air Center, Inc. (Okl.), 571 P.2d 835 (1977). The predominant purpose of the statute was to provide one central place for the filing of such liens and thus eliminate *736 the need, given the highly mobile nature of aircraft and their appurtenances, for the examination of State and County records.
Finally, the appellant contends that the lien in this case could not properly attach to the entire aircraft but only to the propeller assembly. We find no such rule under Washington law. See generally Seaboard Securities Co. v. Berg, 177 Wash. 203, 31 P.2d 503 (1934). Nor do we find anything in the Federal Aviation Act suggesting that an artisan’s protection should be restricted because his notice describing the lien refers to the entire aircraft.
AFFIRMED.

. RCW 60.08.010 does not require the lienholder to retain possession:
“Every person, firm or corporation who shall have performed labor or furnished material in the construction or repair of any chattel at the request of its owner, shall have a lien upon such chattel for such labor performed or material furnished, notwithstanding the fact that such chattel be surrendered to the owner thereof: Provided, however, That no such lien shall continue, after the delivery of such chattel to its owner, as against the rights of third persons who, prior to the filing of the lien notice as hereinafter provided for, may have acquired the title to such chattel in good faith, for value and without actual notice of the lien.”

. The propeller assembly had been reinstalled in the Lockheed Electra aircraft from which it had been removed for repair. The trustee sold the aircraft under a stipulation of the parties that the proceeds would be impounded subject to the determination of the rights of the various lien claimants.

. Section 251 of the Restatement (Second) of Conflicts (1971) states:
“(1) The validity and effect of a security interest in a chattel as between the immediate parties are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the security interest under the principles stated in § 6.
(2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel at the time that the security interest attached than to any other contact in determining the state of the applicable law.”

. We are not impressed by the authority cited by appellant for its argument that the law to be applied in this Federal Aviation Act case is the law of the State where the aircraft or its appurtenances happened to be when the bankruptcy proceedings were begun. When read carefully, the cases cited by appellant stand merely for the proposition that State law and not federal common law determines the validity of liens in bankruptcy cases. See e. g. Victor Gruen Associates, Inc. v. Glass, 338 F.2d 826, 839 (9th Cir. 1964); In re Knox-Powell-Stockton Co., 100 F.2d 979, 982 (9th Cir. 1939).